THE TORO COMPANY,
Plaintiff–Appellee,

v.

WHITE CONSOLIDATED INDUSTRIES, INC., and WCI Outdoor Products, Inc., Defendants–Appellants.

No. 98–1334.

United States Court of Appeals,
Federal Circuit.

Dec. 10, 1999.

Earl D. Reiland, Merchant, Gould, Smith, Edell, Welter and Schmidt, P.A., of Minneapolis, Minnesota, argued for plaintiff-appellee. With him on the brief were David K. Tellekson, and Timothy A. Lindquist.

William McGuinness, Fried, Frank, Harris, Shriver & Jacobson, of New York, New York, argued for defendants-appellants.

Before NEWMAN, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and RADER, Circuit Judge.

Opinion for the court filed by Circuit Judge PAULINE NEWMAN. Dissenting opinion filed by Circuit Judge RADER.

PAULINE NEWMAN, Circuit Judge.

White Consolidated Industries, Inc., and WCI Outdoor Products, Inc. (together "White") appeal the decision[1] of the United

---

* Pursuant to Fed. Cir. Rule 47.11, Senior Circuit Judge Friedman has been designated to replace Circuit Judge Rich, now deceased, on this panel.

1. *Toro Co. v. White Consolidated Industries,*

States District Court for the District of Minnesota granting summary judgment that White infringed United States Patent No. 4,694,528, assigned to The Toro Company ("Toro"). We have construed the claims *de novo*, as precedent requires. On the correct claim construction, the judgment of literal infringement can not stand. We reverse the judgment, and remand for determination of infringement by application of the doctrine of equivalents.

## BACKGROUND

The '528 patent describes and claims a hand-held convertible vacuum/blower, an implement for yard work that can be used both as a vacuum cleaner for collecting leaves and other debris, and as a blower for dispersing the same. In both modes a centrifugal fan (called an impeller) rotating in a housing moves air through the device in a constant direction, sucking air in through an air inlet, and blowing air out through an air outlet or exhaust. For use in vacuum cleaner mode, the operator connects a vacuum tube and nozzle to the air inlet and places a collection bag over the air outlet. Debris is sucked into the impeller where it is mulched by action of the fan and then blown through the air outlet into the collection bag. For use as a blower, the operator connects a directing tube to the air outlet and places a protective cover over the air inlet opening to keep hands, clothing and debris clear of the fan. Such devices were known to the prior art.

The '528 patent is directed to a vacuum/blower wherein the air velocity is adjusted depending on whether the device is used as a vacuum cleaner or as a blower. The velocity of the air during use as a blower is increased by reducing the size of the air inlet.[2] In vacuum mode, however, such reduction of the air inlet opening is not desired, for twigs and other debris can more easily clog the inlet, thus impeding operation of the device.

In the device as claimed in the '528 patent, the cover is fitted with a ring that restricts the size of the air inlet in blower mode and prevents air spill between the high pressure side and the low pressure side of the impeller blades. As illustrated in patent Figure 4, this restriction ring (76) is attached to the air inlet cover, which itself has apertures through which air passes.

*FIG. 4.*

*Inc.*, No. 95–656 DSD/JMM (D. Minn. April 3, 1998).

2. Blower velocity is inversely proportional to the ratio of the diameter of the air intake opening relative to the diameter of the impeller.

In blower mode the air inlet cover bearing the restriction ring is placed on the air inlet opening, whereby the ring reduces the total air inlet, thus optimizing operation as a blower. In vacuum mode the air inlet cover is removed and replaced by the vacuum nozzle, the inlet having the larger aperture desirable for vacuum operation. The '528 patent emphasizes that by attaching the air flow restriction ring to the air inlet cover, i.e., "as part of the air inlet cover," the ring will always be located precisely where it is needed to automatically restrict the air flow when the air inlet cover is in place.

White, a manufacturer of similar devices, upon Toro's introduction of its improved model embodying the patented structure, attempted to design around the '528 patent. In White's design the air inlet is also restricted by a ring that is present during operation as a blower and absent in vacuum mode, as in the '528 patent. But unlike Toro's vacuum/blower, White's restriction ring is not attached as part of the air inlet cover but is a separate part. White's ring is manually inserted into the air inlet opening under the cover during blower operation, and removed along with the cover for vacuum operation. White's restriction ring is not automatically removed with White's cover, but must be separately lifted out. In addition, White's cover is not completely separable from the housing, but swings open on a hinge. White states that its overall design does not incorporate the invention of the '528 patent and constitutes a successful attempt to design around its claims.

Toro charged White with infringement of claims 16 and 17 of the '528 patent (bracketed numerals added):

16. A convertible vacuum-blower comprising:

[1] a housing having an air inlet and an air outlet;

[2] a motor supported in said housing

[3] an impeller having a plurality of impeller blades supported for rotary motion in said housing, in fluid communication with said air inlet and said air outlet, and rotatably driven by said motor;

[4] a removable air inlet cover for covering said air inlet, said air inlet cover having apertures for passage of air through the cover;

[5] attachment means for removably securing said air inlet cover to said housing; and

[6] said cover including means for increasing the pressure developed by said vacuum-blower during operation as a blower when air is being supplied to said impeller through said apertured cover.

17. A convertible vacuum-blower in accordance with claim 16 wherein

[7] said pressure differential increasing means includes a ring carried by said cover and disposed sufficiently close to said impeller to prevent air spill over between the high pressure side and low pressure side of said impeller blades during rotation of said impeller.

The district court construed the claims, as mandated by *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). The court then granted Toro's motion for summary judgment that claim 16 of the '528 patent was literally infringed by the accused devices. Toro conceded that claim 17 was not literally infringed. The charge of infringement under the doctrine of equivalents was not reached during the summary proceedings.

## CLAIM CONSTRUCTION

White argues that the district court incorrectly construed the terms "air inlet cover" and "attachment means for removably securing" in claim clause [5], and "cover including means for increasing the pressure" in clause [6]. White states that on this incorrect construction, summary judgment of infringement was improperly granted.

■ The district court applied the general rule that words in patent claims are given their ordinary meaning in the usage of the field of the invention, unless the text of the patent makes clear that a word was used with a special meaning. *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477, 45 USPQ2d 1429, 1432 (Fed.Cir.1998) ("It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field."); *Hoechst Celanese Corp. v. B.P. Chems. Ltd.*, 78 F.3d 1575, 1578, 38 USPQ2d 1126, 1129 (Fed.Cir.1996) ("A technical term used in a patent document is interpreted as having the meaning that it would be given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning."); *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1577, 27 USPQ2d 1836, 1840 (Fed.Cir.1993). In the '528 specification no special meaning in the field of the invention is attributed to the words "cover," "included," "attachment," and "removable." However, words of ordinary usage must nonetheless be construed in the context of the patent documents. Thus the court must determine how a person of experience in the field of this invention would, upon reading the patent documents, understand the words used to define the invention.

Toro and White had each relied on dictionary definitions of the common words "cover," "attachment," "removable," and "included," each choosing definitions that favored its position. As this case well illustrates, the dictionary definitions of common words are often less useful than the patent documents themselves in establishing the usage of ordinary words in connection with the claimed subject matter. This is not an issue of the richness of language, or variety or imprecision in the usage of words. Determining the limits of a patent claim requires understanding its terms in the context in which they were used by the inventor, considered by the examiner, and understood in the field of the invention.

■ In judicial "claim construction" the court must achieve the same understanding of the patent, as a document whose meaning and scope have legal consequences, as would a person experienced in the technology of the invention. Such a person would not rely solely on a dictionary of general linguistic usage, but would understand the claims in light of the specification and the prior art, guided by the prosecution history and experience in the technologic field.

### A

■ The district court relied on the dictionary definition of "cover" as "something that protects, shelters or guards; ... something that is placed over or about another thing," and construed "cover" as it relates to the claimed vacuum/blower as "that which functions to overlay and conceal the air inlet and serves to guard the impeller." White does not challenge this definition, but argues that its device does not have an "attachment means" whereby its cover is "removably secured" to the housing, as required by clause [5]. White states that its cover is hinged and latched and thus is different from and not equivalent to the "attachment means for removably securing" the cover, shown in the specification as a twist-lock tab and detent system. White states that its hinged cover is shown in a prior art patent to Mattson, and suggests that the tab and detent system was adopted by Toro in order to differentiate its device from that of Mattson. Toro agrees that a hinged cover is shown in Mattson, which is mentioned in column 1 of the '528 patent. However, Toro argues that this reference provides support for viewing the hinge as an equivalent attachment means in terms of '112 ¶ 6.

The district court construed the "attachment means for removably securing said air inlet cover to said housing" of clause [5] as including the hinge of the White device whereby the cover, when lifted from the air inlet, remains attached to the housing. White points out that the cover in its device is not removable from but remains attached to the impeller housing, and argues that the specification of the '528 patent shows that the Toro inventor did not intend to include such structures, which were in the prior art Mattson patent. The district court held that "White fails to distinguish between the cover and the attachment means. With the use of a hinge and latch, the cover is removable from the housing covering the air inlet, even though the attachment means, the hinge and latch, are still attached to the housing." The court held that the term "removably securing" does not require that the cover be entirely separated from the housing, but simply refers to removal of the cover from the air inlet.

This question can not be decided by a dictionary. Dictionaries are useful additional sources, as is the guidance of technical/scientific experts and other relevant evidence, in addition to the patent documents themselves, that may aid the judge in achieving the understanding and viewpoint of a person having experience in the field of the invention. However, dictionaries provide general definitions, rarely in sufficient detail to resolve close questions in particular contexts.

White argues that the attachment means of clause [5], illustrated in the specification as a tab-and-detent structure, does not reach the latch and hinge whereby the cover is attached to the housing and secured to the air inlet opening in the White device. The district court correctly held that it is irrelevant whether the cover in the accused device is attached to the housing, for clause [5] relates only to the attachment means for removably securing the cover to the air inlet opening.

■ Applying '112 ¶ 6, the district court did not clearly err in ruling that the hinge and latch of the accused device is equivalent to the tab-and-detent illustrated in the '528 patent. The use of a latch with a hinged cover is shown in the prior art, performing the identical function of securing the cover to the air inlet during use as a blower, using known interchangeable structures. *Cf. Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1124, 2 USPQ2d 1915, 1918 (Fed.Cir.1987) (equivalence of rack-and-pinion with ratchet-and-pawl). Although White argues that section 112 ¶ 6 requires that the asserted equivalent is described in the specification, that is an incorrect statutory interpretation, for such a requirement would render the statutory provision meaningless.

The district court's interpretation of the attachment means of clause [5] is affirmed.

## B

■ White also argues that its pressure increasing means, the restriction ring, is not "includ[ed]" in the cover as required by claim clause [6] because the ring is not attached to the cover but is an entirely separate component. The district court held that the term "including," correctly construed, "suggests the containment of something as a component or subordinate part of a larger whole," and comprehends a separate restriction ring that is not part of the cover but is separately inserted and removed. The court construed "cover" to "include" both the flap that closes over the air inlet and the restriction ring, explaining that each "overlays" and "guards" the impeller. Thus the court construed clause [6] to mean that the cover includes the restriction ring whether or not the ring is attached to the cover.

The dictionary definitions of "cover" and of "including" do not shed dispositive light on whether the phrase "cover including means for increasing the pressure" is correctly construed as requiring a mechanical attachment between the cover and the restriction ring. Whether clause [6] requires

that the ring be attached to the cover is not a question of '112 ¶ 6. It is a matter of interpretation of the words "including" and "cover" to determine whether, as a matter of law, the claim requires that the cover and the ring are attached to each other. The specification and drawings show the restriction ring as "part of" and permanently attached to the cover. No other structure is illustrated or described. The specification describes the restriction ring as "buil[t] ... as part of the air inlet cover," and does not suggest that the cover and the ring may be two distinct components to be inserted and removed separately. To the contrary, the specification describes the advantages of the unitary structure as important to the invention.

The specification shows only a structure whereby the restriction ring is "part of" the cover, in permanent attachment. This is not simply the preferred embodiment; it is the only embodiment. Thus although Toro argues that it is irrelevant whether the ring and the cover are one part or two, in the specification Toro stressed that they are one:

> Accordingly, building the flow restriction ring as part of the air inlet cover, on which it is needed, but leaving a similarly shaped ring off the vacuum nozzle is also advantageous in that it automatically restricts the size of air inlet depending upon which operation is being conducted without having the operator manually insert or remove a replaceable ring.

'528 patent col. 7 lines 6–12 (citations to drawings omitted). The description of the invention states that the ring is inserted and removed "automatically" when the cover is inserted or removed. Thus when the cover is closed for operation in the blower mode, the ring that is "attached to the inside of the air inlet cover by a plurality of screws" is thereby put into place. It is inserted simply by closing the cover; it is removed by opening the cover.

The specification does not describe an invention broader than this description of the cover and the restriction ring "automatically" inserted and removed together. Nowhere in the specification, including its twenty-one drawings, is the cover shown without the restriction ring attached to it. Nor is the restriction ring shown other than attached to the cover. The specification states that the restricting ring is automatically inserted and removed by the cover to which it is attached, and illustrates only this structure in the drawings. *See* 37 C.F.R. § 1.83(a) ("The drawing in a nonprovisional application must show every feature of the invention specified in the claims."); M.P.E.P. 608.02(d) (Complete Illustration in Drawings). No other, broader concept was described as embodying the applicant's invention, or shown in any of the drawings, or presented for examination.

The claim word "including" is not construed in a lexicographic vacuum, but in the context of the specification and drawings. *E.g., United States v. Adams*, 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966) ("it is fundamental that claims are to be construed in light of the specifications and both are to be read with a view to ascertaining the invention"); *Smith v. Snow*, 294 U.S. 1, 14, 55 S.Ct. 279, 79 L.Ed. 721 (1935) ("if the claim were fairly susceptible to two constructions, that should be adopted which will secure to the patentee his actual invention"); *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1027, 43 USPQ2d 1545, 1551 (Fed.Cir.1997) ("because the claim language, as interpreted in light of the specification, limits the microwave devices to a single gas-confining chamber, this court affirms the district court's grant of summary judgment").

This is not a case of limiting the claims to a "preferred embodiment" of an invention that has been more broadly disclosed. It is well established that the preferred embodiment does not limit broader claims that are supported by the written description. *E.g., Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865, 9 USPQ2d 1289, 1299 (Fed.Cir.1988) ("Ref-

**1302**

erences to a preferred embodiment, such as those often present in a specification, are not claim limitations."). Nor is this a case of limiting claims to immaterial details of a broader invention as set forth in the specification. *See, e.g., SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107, 1118, 227 USPQ 577, 583 (Fed. Cir.1985) (method of operation described in specification improperly read into structural claims). No such broader invention is here described. Instead, the invention is described throughout the specification as it is claimed, whereby the cover "includes" the ring, so that the ring is inserted by closing the cover and removed by opening the cover, "automatically." There is no basis for construing "including" the ring to mean not including the ring.

Toro invokes the doctrine of claim differentiation, pointing to claim 17 which is specific to the restriction ring as "carried by the cover," as supporting a broader scope for the word "including" in claim 16. White responds that there is no support in the body of the specification for such broader meaning of "including," and points out that claim 17 not only replaces "including" with "carried by," but also specifies that the restriction ring is "disposed sufficiently close to said impeller to prevent air spillover between the high pressure side and low pressure side of said impeller blades."

■ The doctrine of claim differentiation can shed light on the proper scope to be afforded a claim limitation, for "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant." *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023, 4 USPQ2d 1283, 1288 (Fed.Cir.1987). However, the doctrine of claim differentiation does not serve to broaden claims beyond their meaning in light of the specification, *see Multiform Desiccants Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1480, 45 USPQ2d 1429, 1434 (Fed.Cir.1998), and does not override clear statements of scope in the specification and the prosecution history. These documents require that clause [6] be construed to mean that the restriction ring is permanently affixed to and included as part of the cover. On this construction, the claims can not be literally infringed by a device having a separate restriction ring that is inserted and removed as a separate part.

The summary judgment of literal infringement is reversed.

**The Doctrine of Equivalents**

Toro argues that even if there is not literal infringement, there is infringement under the doctrine of equivalents. Toro states that White has merely separated into two components that which the patentee achieved with one. *See, e.g., Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1239, 9 USPQ2d 1913, 1923 (Fed.Cir.1989).

The court did not reach the question of whether the use of separate components for cover and ring would nonetheless infringe under the doctrine of equivalents. On this factual question of equivalency, material facts were in dispute. We remand for determination of this issue.

No costs.

*REVERSED AND REMANDED*

RADER, Circuit Judge, dissenting.

The court today determines that the verb "include" in the '528 patent requires an "attachment relationship." However, the court's interpretation of "including" cannot be justified by examination of the ordinary meaning of that word or of its accepted use in patent claims, or, especially, by a careful reading of the '528 patent.

It is axiomatic that terms in a claim must be given their ordinary meaning unless it is apparent that the inventor used them differently in the patent. *Intellicall,*

*Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387 (Fed.Cir.1992). While the court acknowledges that "[d]ictionaries are useful additional sources," it did not consult one to establish the ordinary meaning of "include," a procedure suggested by *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed.Cir.1993). When the parties themselves consulted dictionaries, both emerged with similar definitions of "include," incorporating the concept of "take in or comprise as a whole." Combining this modern definition with the origin of "include" in the Latin *Inclaudere*, to shut in, confine within, or hold as in an enclosure, BLACK'S LAW DICTIONARY, 6th ed. (1990), leaves no doubt that the ordinary meaning of "include" does not require physical attachment.*

In patent claims, "including" is normally a comprehensive term, used in a way similar to "having" or "comprising." JOHN LANDIS, MECHANICS OF PATENT CLAIM DRAFTING, section 7. In a claim element, use of the forms "comprising," "having," or "including," commonly means that whatever element is comprised, had, or included, is not necessarily the only element encompassed by the subject of the clause that contains that verb. *See* Robert C. Faber, *The Winning Mechanical Claim*, 426 PLI/P 231, 353 (1995). "Including," in a claim, thus signifies a relationship broader than "attachment." In the invention of the '528 patent the concept of the flow restrictor, which allows the user to adjust the air flow during the blower mode of operation, is original. '528 patent, col. 2, ll. 29–32. Thus, the choice of the word "including" was appropriate to give the applicant the broad coverage sought and deserved for his original concept.

Finally, a careful reading of the '528 patent also demonstrates that "including" does not here require attachment. The court mistakenly takes the described embodiment to be unique, inferring that the specification teaches that embodiment alone. The court notes that "[t]he specification shows only a structure whereby cover and ring are permanently attached to each other. This was not simply the preferred embodiment; it was the only embodiment." On the contrary, the specification does not claim such uniqueness and describes another embodiment, specifically one in which the flow restriction ring is not permanently attached to the cover. Everywhere the word "embodiment" is used to denote what is described in the specification of the '528 patent, it is used in the phrase "*a preferred* embodiment." More important, the inventor contrasts the preferred embodiment not, as the court thinks, with disadvantageous prior art, but rather with a less-preferred embodiment of the invention at hand: a blower with a replaceable, i.e., non-attached, ring. As the inventor states, the method of construction of the preferred embodiment, in which the flow restriction ring is indeed built into, and thus "part of," the air inlet cover, is advantageous in that "it automatically restricts the size of air inlet … without having the operator manually insert or remove a replaceable ring." '528 patent, col. 7, ll.6–12. But as noted above, there is no prior art for the flow restriction ring, so that such a ring in any form was part of the invention. In particular, an owner-replaceable ring, i.e., one not attached, was clearly part of the invention, and is described by element [6] of claim 16 of the '528 patent. In short, an "included" but definitely not "attached" flow restriction ring is a feature of an embodiment of

---

* In its rejection of the use of common definitions of, e.g., "included," the court notes also that technical terms must be given the meaning that would be understood by persons "experienced in the field of the invention." However, the court admits that "no special meaning in the field … is attributed to the words … 'included,' [and] 'attachment.' " Nor does the court rely on any testimony by either party on the question of whether any meaning, other than the ordinary meaning, is appropriate for these words in the context of the patent

the invention, but not the preferred embodiment.

The term "including," in the context of the '528 patent, does not imply "attachment," and the claims of this patent should not be limited to the preferred embodiment with its attached restricting ring.