SCHREIBER FOODS, INC.,
Plaintiff–Appellant,

v.

BEATRICE CHEESE, INC., Defendant,

and

Kustner Industries, S.A., Defendant–
Cross Appellant,

and

Great Lakes Cheese Co., Inc., Great
Lakes Cheese of La Crosse Wisconsin,
Inc., and Great Lakes Cheese of Wisconsin, Inc., Defendants–Cross Appellants.

Nos. 00–1303, 01–1107.

United States Court of Appeals,
Federal Circuit.

Feb. 27, 2002.

Rehearing and Rehearing En Banc
Denied April 24, 2002.

Before MAYER, Chief Judge, RADER, and DYK, Circuit Judges.

RADER, Circuit Judge.

The United States District Court for the Eastern District of Wisconsin overturned as a matter of law the jury's verdict in favor of Schreiber Foods, Inc. *Schreiber Foods, Inc. v. Beatrice Cheese*, 92 F.Supp.2d 857 (E.D.Wis.2000). Because substantial evidence supports the jury's finding of infringement, this court *reverses* and *remands* for reinstatement of the jury verdict. Because the district court did not abuse its discretion, this court *affirms* its finding of no inequitable conduct.

## BACKGROUND

Schreiber Foods, Inc. (Schreiber) sued Beatrice Cheese, Inc. (Beatrice), and Kustner Industries, S.A., Great Lakes Cheese Co., Inc., Great Lakes Cheese of La Crosse Wisconsin, Inc., and Great Lakes Cheese of Wisconsin, Inc. (collectively Kustner) for infringement of various claims of its two U.S. Patent Nos. 5,440,-860 (the '860 patent) and 5,701,724 (the '724 patent).

The '860 and '724 patents relate to machinery and methods for packaging processed cheese in hermetically sealed individual slices. The accused machines are the Kustner KE and KD individually wrapped slice machines. The question of Kustner's infringement literally or under the doctrine of equivalents depends on the meaning of two limitations in the patent claims: "folding" and "continuous." Claim 1 of the '860 patent reads:

1. A process for packaging a food item formed into a soft mass wherein the food is wrapped in individual slices comprising:

*folding* a continuous web of heat-sealable thermoplastic material into folded condition including a fold, a folded longitudinal first side and an open longitudinal second side, the web on one side of the fold defining a front sheet and the web on the other side of the fold defining a rear sheet;

. . . .

after the food item is inserted, flattening the web to form a *continuous* slice of the food item disposed between the front sheet and the rear sheet of the web. . . .

'860 patent, cl. 1 (emphasis added).

Before trial, the district court held a *Markman* hearing to interpret the disputed terms of the claims. In an August 7, 1998 opinion and order, as modified orally on August 14, 1998, the court found the claim term "folding" synonymous with the "V-folding" language in the specification of both patents. Additionally, the court construed the claim term "continuous slice" to mean a length of flattened food product without any interruptions. *Schreiber Foods*, 92 F.Supp.2d at 860. The court also held that "any creasing . . . creates an interruption." *Id.* at 864.

On August 24, 1998, a jury found that Beatrice and Kustner willfully infringed claims 1 and 2 of the '860 patent, and claims 14, 15, 18, 21, 24, and 25 of the '724 patent. *Id.* at 859 n. 1. The jury was not specifically asked to find whether Schreiber proved literal infringement. *Id.* at 862 n. 5. On Kustner's motion for judgment as a matter of law (JMOL), the district court held in its March 30, 2000 decision and order that: (1) the patents were not literally infringed; (2) the "all elements" rule precluded a finding of infringement under the doctrine of equivalents; and (3) Schreiber did not intentionally withhold material information from the Patent and Trademark Office (PTO). *Id.* at 882. In an earlier decision and order, the court concluded that prosecution history estoppel did not preclude a finding of infringement under the doctrine of equivalents. *Id.* at 859.

On Schreiber's motion to amend the March 30, 2000 judgment, the district court issued a decision and order on October 18, 2000, vacating the judgment on the merits against Beatrice and dismissing with prejudice all claims and counterclaims between Schreiber and Beatrice. Schreiber appeals the judgment of non-infringement of its two patents by Kustner. Kustner cross-appeals the judgment of no inequitable conduct by Schreiber. This court has jurisdiction under 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

This court reviews a district court's grant of JMOL without deference. *Texas Instruments Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1563, 39 USPQ2d 1492, 1496 (Fed.Cir.1996); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 975, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). A trial court may only enter JMOL if the jury's verdict is unsupported by substantial evidence or premised on incorrect legal standards. *Applied Med. Res. Corp. v. United States Surgical Corp.,* 147 F.3d 1374, 1376, 47 USPQ2d 1289, 1290 (Fed.Cir.1998); *Markman,* 52 F.3d at 975.

Inequitable conduct lies within the discretion of the district court. Thus, this court reviews inequitable conduct determinations for an abuse of discretion. *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (en banc). In other words, this court reverses the district court's discretionary ruling only when it is premised upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law, or evinces a serious error of judgment. *Id.*

An infringement analysis requires the trial court to determine the meaning and scope of the asserted patent claims. *Markman* 52 F.3d at 976. This court reviews that claim construction without deference. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc).

As a general rule, terms in a patent claim receive their plain, ordinary, and accepted meaning within the community of those of ordinary skill in the relevant art. *Toro Co. v. White Consol. Indus., Inc.,* 199 F.3d 1295, 1299, 53 USPQ2d 1065, 1067 (Fed.Cir.1999). A "heavy presumption" favors the ordinary meaning of claim language as understood by one of ordinary skill in the art. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 989, 50 USPQ2d 1607, 1610 (Fed.Cir.1999). Beyond this accepted meaning, however, the construing court consults the specification and relevant prosecution history to provide context for understanding the meaning of the terms to one of skill in the art at the time of invention. *Pitney*

*Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1309, 51 USPQ2d 1161, 1169 (Fed.Cir.1999). The interpretative process forbids importing limitations from the specification into the defining language of the claims. *Intervet Am., Inc. v. Kee–Vet Labs., Inc.,* 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989).

■ The accepted meaning of the term "fold," when used as a verb, is: "to lay one part over another part," or "to reduce the length or bulk by doubling over." *Webster's Ninth New Collegiate Dictionary* at 478–79 (1990). When used as a noun, "fold" means: "a part doubled or laid over another part," or "a crease made by folding something." *Id.* at 479.

In this case, the district court erred by restricting the term "folding" to the "V" fold featured in the specification. Specifically, in construing the term "folding" in claim 1, the court turned to a portion of the specification that defines the "V-folded condition." [1] '860 patent at col. 1 lines 28–33; '724 patent at col. 1 lines 26–31. The trial court then compared that portion of the specification to claim 1 and concluded that the term "folding" in claim 1 is synonymous with "V-folding" in the specification. [2] By this conclusion, the district court impermissibly imported the "V" limitation from the specification into the claim term "folding."

The district court also relied on the prosecution history to construe "folding." During prosecution of the '860 patent, Schreiber amended claim 1 by deleting the "V-" in "V-folding." The examiner entered the amendment. Later, during prosecution of the '724 patent, Schreiber attempted to make the same amendment to the specification. This time, however, the examiner rejected the amendment as new matter. Specifically, the examiner stated:

> The original disclosure does not support the added material [deletions of "V" and insertion of a paragraph, etc.] because the added material sets forth folding a web in any manner known to one skilled in the art, with V-folding merely an example of such folding. *The original disclosure supported only folding or V-folding.* Further, the added material also sets forth other examples (cylindrical and oval) of folding a web. The original disclosure did not set forth any other examples of folding. . . . It is also not clear that a web which has been folded in a cylindrical or oval manner, had a fold (as claimed in the parent application 08/098,752, now U.S. Patent 5,440,860).

Examiner's Office Action in Application Serial No. 08/482,862, at 3 (Jan. 9, 1997) (emphasis added). The trial court found that Schreiber's acquiescence by canceling the amendment amounted to disclaiming a broader interpretation of "folding" advanced. Based on these conclusions, the trial court specified that the folding step of claim 1 requires that (1) the front and rear sheet be joined by a fold at the bottom, such that (2) the V-fold approximates the letter "V" in cross section.

The district court erred by applying this restrictive definition of "folding" in its JMOL decision. Although barring

---

1. According to the specification, the term V-folded condition refers to a length of material that has been folded over onto itself to form what may subsequently be identified as a front sheet and a rear sheet joined by the fold at the bottom, to approximate the letter "V" in cross section. '860 patent at col. 1 lines 28–33; '724 patent at col. 1 lines 26–31.

2. The court found that claim 1 speaks of only one fold, with the film on one side of the fold constituting a front sheet and the film on the other side constituting a rear sheet—the *same* as the V-fold definition. '860 patent at col. 1, lines 28–33; '724 patent at col. 1 lines 26–31.

Schreiber from inserting into the specification examples of "cylindrical and oval" folding, the examiner also stated that the original disclosure supported "folding or V-folding." In other words, the examiner found that the original disclosure supported a broader concept of "folding" as well as the more specific example of "V-folding." Moreover, the specification does not exclude other types of "folding" from the broader generic concept of "folding."

This court's precedent forbids a construction of claim terms that restricts claims beyond the limits in the claim terms themselves, or beyond any unambiguous restriction in the specification or prosecution history. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347, 49 USPQ2d 1199, 1203 (Fed.Cir.1998) ("[A] court may not import limitations from the written description into the claims."); *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186, 48 USPQ2d 1001, 1005 (Fed.Cir.1998) ("[W]hile ... claims are to be interpreted in light of the specification, it does not follow that limitations from the specification may be read into the claims."); *In re Donaldson Co.*, 16 F.3d 1189, 1195, 29 USPQ2d 1845, 1850 (Fed. Cir.1994) ("[G]eneral claim construction principle that limitations found only in the specification of a patent or patent application should not be imported or read into a claim."); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121, 227 USPQ 577, 585 (Fed.Cir.1985) (en banc) ("It is the *claims* that measure the invention.") (emphasis in original). Accordingly, this court does not limit the meaning of the term "folding" to only a "V fold."

■ The district court also erred in its construction of the term "continuous." The accepted meaning of "continuous" is: "marked by uninterrupted extension in space, time, or sequence." *Webster's Ninth New Collegiate Dictionary* at 284. Relying on this definition, the trial court construed "continuous slice" to mean a length of flattened food product without any interruptions. *Schreiber Foods*, 92 F.Supp.2d at 860. The problem arises, however, in defining an interruption. To define "interruptions," the trial court again overemphasized the specification.[3] Specifically, the district court determined that "[a]ny *creasing or cross-sealing* across the width of the web of film and product, which pushes out some of the food product from that cleated or cross-sealed zone even if a thin layer of food product remains □ creates an interruption that results in separate or discontinuous slices or ribbons." *Schreiber Foods*, 92 F.Supp.2d at 864 (emphasis added). This emphasis on "interruptions" impermissibly imported the limitation of "without any creases" into the term "continuous." The specification does not preclude any creases in a "continuous slice." Accordingly, this court reverses the district court's construction of the term "continuous."

### Infringement

■ After claim construction, an infringement analysis compares the properly construed claim with the allegedly infringing devices. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360, 54 USPQ2d 1308, 1312 (Fed.Cir.2000). Infringement, either literally or under the doctrine of equivalents, does not compare the accused product "with a preferred em-

---

3. The specification indicates that after passing through the cross-sealing station "[t]he web now includes a plurality of slices of cheese," *id.* at col. 5 lines 29–30, and that the pressure exerted in the cross-sealing zones by opposing "jaws" "results in a slice of cheese to be defined between adjacent contacting zones of the web.... The slices of cheese are defined in the section between the jaws," *id.* at col. 8 lines 51–53, 58–59.

bodiment described in the specification, or with a commercialized embodiment of the patentee." *SRI Int'l,* 775 F.2d at 1121; *see also Atlantic Thermoplastics Co.,* 974 F.2d at 1300. The comparison between the accused product and the properly construed claim is a question of fact. *Mas-Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211, 48 USPQ2d 1010, 1014–15 (Fed.Cir.1998). This court reviews factual findings for clear error. *Id.*

The accused Kustner machines inject liquid cheese into a plastic tube. In other words, the Kustner machine draws a web around a cylindrical structure to form a receptacle for the cheese. Without unduly limiting the term "folding," a reasonable jury could find that the Kustner machines folded the web together to receive the cheese. Thus, the jury's verdict is reasonable in light of a broader meaning of the term "folding" in the claims. In its JMOL, the district court erred in comparing the accused Kustner machines with the preferred embodiment of V-folding described in the specification rather than with the properly construed claim.

The Kustner machines are "hot crimp" machines. These accused machines make "creases" with cleated flattening belts that remove substantially all of the cheese in a sealing zone across the web. Nonetheless, a reasonable jury could find that the flattened cheese indeed produces a continuous slice. As discussed above, proper construction of the term "continuous" does not include the "without any creases" limitation. Hence, a reasonable jury could also find that the Kustner machines met the "continuous slice" limitation of the claims.

In the present case, despite the district court's erroneous construction of the disputed claim terms, a jury found that Kustner willfully infringed claims 1 and 2 of the '860 patent, and claims 14, 15, 18, 21, 24, and 25 of the '724 patent. *Schreiber*

*Foods,* 92 F.Supp.2d at 859 n. 1. Accordingly, this court concludes that substantial evidence supports the jury's finding of infringement and remands to the district court to reinstate the jury verdict. "[B]ecause the jury found infringement under the trial court's more restricted reading of the claims, this court need not remand for an infringement determination according to this court's broader claim interpretation." *Al-Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1323, 50 USPQ2d 1161, 1170 (Fed.Cir.1999). Furthermore, because this court resolves the issues on appeal on the ground of literal infringement, this court need not reach the issue of infringement under the doctrine of equivalents.

## Inequitable Conduct

"Applicants for patents, including their patent attorneys, are required to prosecute patent applications in the PTO with candor, good faith, and honesty." *Elk Corp. v. GAF Bldg. Materials Corp.,* 168 F.3d 28, 30, 49 USPQ2d 1853, 1855 (Fed. Cir.1999) (quoting *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178, 33 USPQ2d 1823, 1827 (Fed.Cir.1995)). A breach of this duty may constitute inequitable conduct and render a patent unenforceable. *Id.* To show inequitable conduct due to failure to disclose material information, the challenger must prove by clear and convincing evidence that: (1) the prior art was material; (2) knowledge—chargeable to an applicant—of the prior art and of its materiality; and (3) failure to disclose the prior art with an intent to mislead the PTO. *Id.* To meet the materiality requirement, a reference must necessarily be prior art. *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 940, 15 USPQ2d 1321, 1328 (Fed.Cir.1990).

Kustner asserts that Schreiber, with the intent to deceive, withheld from the PTO material information concerning the Kust-

ner KA machine. Kustner argues that the information could have invoked an on sale bar under § 102(b). To prove that the Kustner KA machine was on sale under 35 U.S.C. § 102(b) and therefore constituted material information, Kustner must demonstrate that "there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." *UMC Elecs. Co. v. United States*, 816 F.2d 647, 656, 2 USPQ2d 1465, 1472 (Fed.Cir.1987). Moreover, under § 102(b), a commercial offer for sale must be a formal offer under commercial contract principles with terms that can be accepted to form a contract. *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1046, 59 USPQ2d 1121, 1126 (Fed.Cir.2001).

Without any evidence of a formal offer, acceptance, contract, or bill of sale, the record does not show that the Kustner KA prototype was the subject of a commercial offer. Thus, Kustner did not prove by clear and convincing evidence that the Kustner KA machine was on sale in the United States before the critical date (June 5, 1988) or that Schreiber had knowledge of the same. Thus, the district court did not err in finding the materiality prong of the inequitable conduct inquiry was not met.

Kustner also urges this court to remand the case to the trial court because the Supreme Court's *Pfaff* opinion makes the district court's on sale bar jury instructions erroneous. *Pfaff v. Wells Elec., Inc.*, 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261, 48 USPQ2d 1641 (1998). In this case, however, even if the jury instructions were erroneous in light of *Pfaff*, the error would be harmless. In sum, the district court did not abuse its discretion in finding no inequitable conduct.

## CONCLUSION

The district court erred in granting Kustner judgment as a matter of law and overturning the jury verdict. Because substantial evidence supports the jury's finding of infringement of Schreiber's two patents, this court reverses and remands to reinstate the jury's verdict. This court, however, affirms the district court's finding of no inequitable conduct.

## COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED*