**NETWORK COMMERCE, INC, Plaintiff,**

v.

**MICROSOFT CORPORATION, Defendant.**

**No. C01–1991P.**

United States District Court, W.D. Washington, at Seattle.

March 10, 2003.

Ramsey M. Al–Salam, Perkins Coie, Seattle, WA, for Network Commerce Inc., a Washington corporation.

Mark Steven Parris, Heller, Ehrman, White & McAuliffe, Seattle, WA, J. Christopher Carraway, Joseph T. Jakubek, Klarquist, Sparkman, Campbell, Leigh & Whinston, LLP, Portland, OR, Stephen P. McGrath, Microsoft Corp., Redmond, WA, for Microsoft Corp., a Washington corporation.

## ORDER REGARDING CLAIMS CONSTRUCTION OF UNITED STATES PATENT NO. 6,073,124

PECHMAN, District Judge.

This matter comes before the Court on cross motions for construction of certain claim language in Network Commerce, Inc.'s ("NCI") patent, United States Patent No. 6,073,124. (Dkt. Nos. 19 and 20) Having considered the parties' opening

claims construction briefs and supporting papers, their response briefs and supporting papers, the Joint Claims Construction Statement submitted by the parties, and having heard oral argument on the issues, the Court interprets the disputed language as explained below.

## BACKGROUND

This litigation involves alleged infringement of four patents. NCI has filed suit against Microsoft Corporation ("Microsoft") for infringement of United States Patent No. 6,073,124 (issued June 6, 2000) ("the '124 patent"). Microsoft in turn asserted counterclaims against NCI for infringement of three of its patents—United States Patent Nos. 5,822,526, 5,999,914 and 5,794,006. Only terms of the '124 patent are presently before the Court; interpretation of claims in Microsoft's patents will be interpreted in a separate *Markman* hearing to be held on November 15, 2002.

Specifically at issue before the Court is the construction of several terms in claims 1, 4 through 8, and 10 through 16 of the '124 patent. The patent discloses systems and methods in e-commerce related to the purchase, license, and download of products on-line. The disputed claims are reproduced below, with the disputed terms emphasized.

What is claimed is:

1. A computer system for conducting **electronic commerce** including:

a store computer that receives requests for electronic data from a client computer and that, **in response** to receiving the request, sends to the client computer **a download component that coordinates the download of the electronic data;**

a supplier computer that receives **a request** from the download component of the client computer to download the electronic data and that, **in response to** receiving the request, sends the elec-tronic data and a **licensing component** to the client computer, the **licensing component** for coordinating the licensing of the electronic data; and

a licensing computer that receives a **request** from the licensing component of the client computer to license electronic data and that, **in response to** receiving the request, determines whether access to the electronic data is to be allowed at the client computer, and when access is allowed sends a notification that access is allowed to the client computer.

2. (Not at issue)

3. (Not at issue)

4. The system of claim 1 wherein the store computer, the supplier computer, and the licensing computer are separate computers.

5. The system of claim 1 wherein the store computer, the supplier computer, and the licensing computer are separate web servers.

6. The system of claim 1 wherein the store computer, the supplier computer, and the licensing computer are separate web sites.

7. A method in a computer system for conducting **electronic commerce**, including:

requesting a first web server to order electronic data;

receiving **in response to** the request a **download component for coordinating the download of the electronic data;** and

**under control of the download component,** downloading from a second web server the electronic data.

8. The method of claim 7 wherein the download component also downloads a **licensing component** and including:

**under control of the licensing component,** requesting and receiving from a

third web server a license for using the electronic data; and

using the electronic data in accordance with the received license.

9. (Not at issue)

10. (Not at issue)

11. A method in a store computer for coordinating **electronic commerce,** the method including:

receiving from a client computer a request to purchase electronic data; and

**in response to** receiving the request, sending to the client computer **a download component, the download component for coordinating the download of the electronic data** from a supplier computer to the client computer, the supplier computer for **downloading** to the client computer the electronic data **when requested by the download component.**

12. The method of claim 11 wherein the supplier computer downloads a **licensing component** that requests a licensing computer for a license to use the electronic data.

13. The method of claim 11 wherein the store computer, the client computer, and the supplier computer communicate via the Internet.

14. The first computer for coordinating **electronic commerce,** including:

means for receiving from a second computer a request to purchase electronic data; and

means for, **in response to** receiving the request, sending to the second computer **a download component, the download component for coordinating the download for the electronic data** from a third computer to the second computer, the third computer for **downloading** to the second computer the electronic data **when requested by the download component.**

15. The first computer of claim 14 wherein the third computer downloads a **licensing component** that requests a fourth computer for a license to use the electronic data.

16. The first computer of claim 14 wherein the computers communicate via the Internet.

United States Patent No. 6,073,124. Declaration of William D. Fisher, Exhibit A. (emphasis added).

## ANALYSIS

*1. Sources to which the Court may look in the claims construction process*

■■■■ Claim construction is an issue of law for the Court to decide. *Markman v. Westview Instruments,* 52 F.3d 967, 979 (Fed.Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In construing claims, the Court looks first to intrinsic evidence, and only if necessary to extrinsic evidence. In reviewing intrinsic evidence, the Court first looks to the "words of the claims themselves." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). "The general rule is that terms in the claim are to be given their ordinary and accustomed meaning." *K–2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1362 (Fed.Cir.1999). In the alternative, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics,* 90 F.3d at 1582. The patent specification is usually dispositive, as it is "the single best guide to the meaning of a disputed term." *Id.* On the other hand, claims are not limited to the embodiment disclosed in the specification. "It is well established that the preferred embodiment does not limit broader claims that are supported by the written description." *Toro Co. v. White Consol. Indus., Inc.,* 199 F.3d 1295, 1301 (Fed.Cir.

1999). In addition to the language of the claims and the specification, the final piece of intrinsic evidence available to the Court in claims construction is the prosecution history of the patent. *Vitronics,* 90 F.3d at 1582. "The history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Id.*

■ The Court looks to extrinsic evidence only if intrinsic evidence is insufficient to "resolve any ambiguity in a claim term." *Id.* at 1583. This is because "the claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely." *Id.* Extrinsic evidence may include expert and inventor testimony, dictionaries, and learned treatises. *Markman,* 52 F.3d at 980. Extrinsic evidence is reviewed in claims construction at the discretion of the Court. *Id.* Such evidence may be helpful "to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history," or "may demonstrate the state of the prior art at the time of the invention." *Id.* "Extrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Id.* at 981.

## 2. The Court's construction of the disputed claim language

Most of the disputed terms are repeated several times throughout the claims. The Court interprets each term only once, and the Court's interpretation holds each time the specific language occurs in the claims. The Court interprets the claim language as follows.

### a. "electronic commerce"

■ Claims 1, 7, 11, and 14 refer to computers and systems for conducting and coordinating "electronic commerce." Microsoft argues that "electronic commerce" should be limited to the "purchase and download" of electronic data over an electronic network. This interpretation is based entirely on one description in the patent specification of buying selling software over the internet, this being known as "digital commerce." *'124 Patent,* 1:30–37; 1:21–25.

NCI correctly responds that this definition is not in the part of the specification that describes the invention, but rather is part of a preamble describing the prior art. Instead, NCI proposes a construction that includes any commercial activity conducted by means of computer through a network.

The Court adopts NCI's interpretation. Microsoft's interpretation would not only be contrary to the ordinary meaning of the phrase, it would also improperly import a limitation from the specification. Electronic commerce is commercial activity—including, for example, licensing and purchasing transactions—conducted over an electronic network, such as the Internet. This interpretation is consistent with the ordinary meaning of the phrase and is supported by the specification. *'124 Patent,* 1:45–51, 4:23–27, 5:62–64, 15: 40–43, 24: 38–28:2.

### b. "in response to"

■ Claims 1, 7, 11, and 14 refer to various computers acting "in response to" requests. NCI argues that this phrase means "to take some action in reply to or in reaction to the request." NCI's arguments are based on the ordinary meaning of the words. Microsoft counters that the phrase should mean that the response occurs "as a direct result of" or is "directly

caused by" the request. Microsoft argues further that "in response to" cannot be unlimited in time, can not cover breaks in causation, and that NCI's construction would eliminate the Claims' requirement of what performs the response. NCI responds that Microsoft is improperly adding time and event limitations from the specification.

The ordinary meaning of the words in the claim is clear; no further interpretation is necessary. "In response to" means to take some action in reply to or in reaction to the request. Nothing in the specification or prosecution history limits the meaning of this phrase, and it is immaterial whether the response occurs immediately after the request or whether there is a time gap or intervening events prior to the response. To add limitations of time and singular causation would be to improperly import limitations from the specification. *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1301 (Fed.Cir.1999).

c. "download component"

■ Claims 1, 7, 11, and 14 refer to a "download component" that coordinates or controls the download of electronic information. NCI argues that a "download component" is a part of a system "involved in" the transfer of data from one device to another. Together with its definitions of "coordinate," "control," and "request," (see below) NCI proposes that a download component is

> any part of a computer system—including a program, an application, or a data or text file—that arranges for, or works together with one or more other parts of the system to arrange for, the transfer or delivery of the requested electronic data from one computer or server to another.

Joint Claim Construction Statement, Ex. A at 3. NCI thus takes a deconstructionist approach to this phrase and argues that the ordinary meaning of the words individually makes up an ordinary meaning as a whole. NCI contends that such an ordinary meaning does not imply an active component, and therefore no executable file or program is necessarily contained within the download component as claimed.

Microsoft, on the other hand, argues that the "download component" is merchandise specific, and must contain at least an executable program for downloading merchandise. In addition, Microsoft contends that the "download component" is neither a content player nor a web browser.

The Court finds that it can adopt neither an interpretation as ambiguous and broad as NCI's preferred interpretation, nor one as specifically limited as Microsoft's. The Court finds that a "download component" by the plain language of the claims requires an executable file or program, but does not necessarily need to be merchandise-specific. The Court does not reach the issue of whether a "download component" is a content player or a web browser.

First, the grammatical structure of the claim language indicates that the "download component" contains an executable file or program. As explained below, a "component" is a constituent part or element. To "download" is to transfer data from one computer to another over some type of connection, usually a network. Together, these terms imply a part that downloads or a part that plays an active role in downloading. While the Court finds that there is no "ordinary meaning" to the phrase as is known by one of skill in the art, the combination of these two words in such a fashion produces an ordinary result.

Likewise, the plain language of the claims indicates that a "download component" "coordinates" or "controls" the download of information. It also makes

requests for electronic content from a source computer. Thus, the literal terms of the claim language indicate that *actions* are taken by the "download component," thereby necessitating the presence of an active constituent part. In computer programming, such an active part is an executable file or program. Based on the claim language, the Court finds that the "download component" must include an executable file or program.

This interpretation of the claim language is supported by many references in the specification. *'124 Patent,* 4:24–27, 7:21–31, 7:44–58, 9:24–62, 11:2–13, 15:47–51. Although NCI argues that the specification represents only one embodiment of the claim language, there is nothing in the specification that indicates that the "download component" could possibly be a completely inactive data file or that the active functions referred to in the claims could be carried out by some other component.

The interpretation is also loosely supported by the prosecution history of the patent, where NCI represented to the Patent and Trademark Office that the "download component executing on the client computer then coordinates the download of electronic data from a supplier computer." Declaration of J. Christopher Carraway, Ex. E (MA 183). All these sources of intrinsic evidence make clear that the inventor envisioned the invention to contain a "download component" that could execute.

On the other hand, nothing in the claim language, specification, or prosecution history mandates an interpretation that the "download component" be merchandise-specific. Although the specification discloses an embodiment that appears to be merchandise-specific, the claims are not limited to the specified embodiment. To add a limitation of merchandise-specificity would be to improperly import limitations from the specification.

Whether the patent reads on a content player or a web browser is a matter for summary judgment or fact-finding, and the Court declines to interpret the claims in such a manner that addresses such specific limitations.

d. "coordinates" or "coordinating"

 Claims 1, 7, 11, and 14 refer to the term "coordinates" or "coordinating." The Court adopts NCI's proposed interpretation of the term "coordinate." To "coordinate" means to harmonize, work together, or bring into a common action, effort or condition. This interpretation is supported by the ordinary meaning of the claim language, the patent specification, *see '124 Patent,* 4:16–20, 12:27–45, and dictionary definitions submitted by NCI. Fisher Decl. Ex. L. The ordinary meaning of the word "coordinate" does not connote a "dominating influence" as Microsoft proposes, and the specification does not so limit this term.

e. "download"

 Claims 1, 7, 11, and 14 refer to the term "download." The Court likewise adopts NCI's proposed interpretation of this term. To "download" means to transfer data from one computing device to another over some type of connection, usually a network. This interpretation is supported by the ordinary meaning of the term, the patent specification, *see '124 Patent* 7:6–16, and dictionary definitions submitted by the parties. Fisher Decl. Ex. K, Carraway Decl. Exs. J, K, and L. It is also supported by Microsoft's submitted article describing streaming, which states that "[t]he file continues to be downloaded as the music begins to play." Carraway Ex. P (MA 275–276). Thus, downloading and streaming, while different, are not mutually exclusive. Nothing in the claim language, specification, prose-

cution history, or extrinsic evidence excludes the possibility of streaming while downloading. Within the context of the '124 patent, "download" simply means that data is transferred from one computing device to another over a connection.

### f. "request"

■■■ Claims 1, 7, 11, and 14 refer to the term "request." This term is not highly contested, and the Court finds the proposed interpretations of the parties very similar. A "request" is a communication, message or directive that asks a remote computer for a response, including the download of electronic data. "To request" is to send such a message. This is an active term, not a passive one. This interpretation is consistent with the ordinary meaning of the claim language and the patent specification. '124 Patent, 3:10–14, 12:34–37.

### g. "licensing component"

■■■ Claims 1, 7, 12, and 15 refer to a "licensing component." The analysis of this phrase is analogous to that of "download component," and its interpretation must be consistent. A "component" is a constituent part or element. To "license" is to permit or authorize especially by formal license. Together, these terms imply a part that licenses. While the Court finds that there is no "ordinary meaning" to the phrase as is known by one of skill in the art, the combination of these two words in such a fashion produces an ordinary result. A "licensing component" is a part that coordinates or requests the licensing of information or products. The phrase implies action or the presence of an active constituent part. In computer programming, such an active part is an executable file or program. Thus, based on the claim language, the Court finds that the "licensing component" must include an executable file or program. This interpretation is consistent with the claim language

and the patent specification. '124 Patent, 4:27–32, 5:15–20, 7:62–67, 9:50–54, 9:60–10:2, 10:14–18, 10:33–36, 10:51–55, 17:38–18:22.

On the other hand, nothing in the claim language, specification, or prosecution history mandates an interpretation that the "licensing component" be merchandise-specific. Although the specification discloses an embodiment that appears to be merchandise-specific, the claims are not limited to the specified embodiment. To add a limitation of merchandise-specificity would be to improperly import limitations from the specification.

### h. "control"

■■■ Claims 7 and 8 refer to downloading or licensing under "control" of the respective components. NCI argues directly for the equation of the terms "control" and "coordinate," essentially contending that the terms have no functional difference within the context of the patent. Alternatively, NCI argues that "control" means "to direct, guide or manage the transfer or delivery of electronic data." Microsoft again argues for an interpretation that includes the exercise of a dominating influence in the download or licensing process.

The Court finds that the terms "coordinate" and "control" can not be equated. NCI used different language in different claims. The difference is presumed to be intentional, and therefore should be given effect. Yet the Court finds nothing in the claim language, patent specification or prosecution history that mandates such a narrow, limited definition as that proposed by Microsoft. The Court therefore adopts NCI's alternative definition. To "control" means to direct, guide or manage the transfer or delivery of electronic data. This is an active term, not a passive one. This interpretation is consistent with the

ordinary meaning of the claim language, the patent specification, and dictionary definitions submitted by NCI. Fisher Decl. Ex. M.