MOORE, Circuit Judge,
dissenting-in-part.
I join the majority opinion in all respects but one. Because I conclude that the district court correctly construed the term “registration server,” I would affirm the district court’s grant of summary judgment of non-infringement of claims 1-22 of the '573 patent. The district court correctly held that the claimed “registration server” must be “free of content managed by the architecture.” This case presents one of the rare instances where a patentee clearly disavowed claim scope through limiting language in the specification. The majority errs and allows the patent owner to reclaim surrendered claim scope, thus subverting the public notice function of patents.
Our case law is clear that a claim term should be accorded the full breadth of its plain and ordinary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. See Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir.2005) (en banc). But there are two limited exceptions to this rule: if the patentee acted as its own lexicographer or clearly disavowed the plain and ordinary meaning of a claim term. Thorner v. Sony Computer Entm’t Am. LLC, 669 F.3d 1362 (Fed.Cir.2012).
The standard for disavowal is exacting. “Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.” SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1341 (Fed.Cir. 2001). Language giving rise to disavowal must amount to “expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.” Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1325 (Fed.Cir.2002).
The plain and ordinary meaning of the term “registration server” does not require that the server be free of content managed by the architecture. But the patentee disavowed the full scope of this claim term with its repeated statements in the specification to the contrary. In its initial description of the registration server, the specification states that “each registration server 108 is free of courseware or other deliverable content that is managed by the architecture 100. In particular, courseware is not stored on the registration server 108.” 573 patent col.8 ll.29-33. That data is stored on the content *1281 server. Id. col.13 ll.36-37. The patentee clearly disavowed the full scope of the term “registration server” when it stated:
A given computer may host several content servers 110, or it may host several registration servers 108, but a content server 110 and a registration server 108 may not reside on the same computer because that would violate the requirement that registration servers 108 not contain courseware.
Id. col.9 ll.10-15 (emphasis added). In discussing the content server, the specification again emphasizes that “[ujnlike the registration server 108, the content server 110 contains courseware and other managed content.” Id. col.13 ll.36-37. The specification describes the reason for separating the registration functions from content, stating “additional security is provided by separating registration information from content.” Id. col.7 ll.10-11; col.22 ll.61-63 (“Because content is stored on the registration server 108, security precautions can be taken that might not otherwise be available.”).
It is difficult to imagine a clearer case of disavowal. The patentee states that it is a “requirement” that a registration server include no content managed by the architecture. This is exactly the type of clear and unmistakable language that is sufficient to place the public on notice that the patentee has surrendered the full scope of a claim term. We have found disavowal in cases with less restrictive language. For example, in The Toro Co. v. White Consolidated Industries, Inc., 199 F.3d 1295, 1301-02 (Fed.Cir.1999), we held there was disavowal when the specification disclosed a single embodiment and described the relevant structure as “important to the invention.” The instant case is much more compelling as the specification expressly states that it is a “requirement” that the registration server be free of content managed by the architecture.
The majority does not deny the disavowal in the specification, but rather concludes that it is limited to claims 23-27 — the architecture claims. The majority holds that the disavowal does not clearly and unmistakably apply to the corresponding method claims 1-22. The majority also concludes that there is no disavowal because a holding of disavowal would render superfluous the language in claim 23, which states “each registration server being further characterized in that it is free of content managed by the architecture.” Majority Op. 1273-76.
The majority’s claim that the portions of the specification discussing the claimed methods do “not suggest that the registration server cannot contain any managed content,” Majority Op. at 1276, is with all due respect incorrect. The distinction the majority draws between the “architecture” disclosure and “method” disclosure is contradicted by the same portion of the specification the majority cites. For example, the specification plainly states that “FIG. 7 illustrates methods for operating architecture 100,” including locating “the service provider Web site, which is hosted by the registration server 108.” 537 patent col.20 ll.39-44 (emphasis added); see also id. col.22 ll.29-30 (“content server 110 communicates that acceptance to the funds flow manager 308 in the registration server 108 ”). This is the same “registration server 108” that was expressly limited by the patentee earlier in the specification. When the specification refers to this registration server, by reference number, it is the one that has already been limited to a server that is free of content managed by the architecture.
Our precedent does not require that a patentee restate disavowal language repeatedly throughout the specification every time it references the same element; such a rule would be nonsensical. The *1282 method in this case is unequivocally the method of operating the defined architecture. The portion of the specification disclosing the method expressly refers by reference number to the architecture and its components. In short, there are not two different registration servers: one in the architecture claims and a different one in the method claims. At all times, the methods use a specific registration server — registration server 108 — the very one the majority acknowledges must be free of managed content. And if any doubt remained, the specification expressly states that the “methods of the present invention” use the architecture described in the specification. Id. col.16 ll.48-53 (“Unless otherwise expressly indicated, the description herein of methods of the present invention therefore extends to corresponding systems and configured storage media, and the description of systems and configured storage media of the present invention extends likewise to corresponding methods.”). To me, this is a clear and unmistakable disclaimer.
The majority’s second justification relies on claim differentiation with regard to claim 23, which explicitly states that the registration server must be “free of content managed by the architecture.” The majority reasons that if the term “registration server” alone means a server with no content managed by the architecture, then the explicit limitation in this claim is superfluous. Majority Op. 1274-75. I agree. It does appear that the proper construction of “registration server” renders this language superfluous. I further agree that the doctrine of claim differentiation counsels against doing this. However, when faced with a clear case of disavowal and a claim differentiation argument, the court must always hold that the clear and unmistakable disavowal trumps. Our case law is quite clear on this choice.
[T]he doctrine of claim differentiation does not serve to broaden claims beyond their meaning their meaning in light of the specification, and does not override clear statements of scope in the specification and the prosecution history.
Toro Co., 199 F.3d at 1302 (citations omitted). And, this is the only reasonable result. To hold otherwise would allow a patentee to game the system by filing a continuation including limitations that would be superfluous thus eliminating the clear disavowal in the earlier filed specification. The majority’s logic allows this patentee to recapture claim scope that was surrendered in the application, and violates the public notice function of patents. Indeed, in the present case, claim 23 (the only claim with this language that would be rendered superfluous) of the '573 patent was submitted to the PTO after the filing of its parent application. Once the patentee has clearly disavowed the plain and ordinary meaning of a term, the patentee should not be able to change the rules by recapturing that scope through creative claim drafting.
This is to me a clear and unmistakable case of disavowal. The district court’s claim construction is correct. Thus, we should affirm its summary judgment of non-infringement of claims 1-22 of the '573 patent.