NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALEXSAM, INC.,**
*Plaintiff-Appellant*

**v.**

**SIMON PROPERTY GROUP, L.P., BLACKHAWK NETWORK, INC.,**
*Defendants-Appellees*

**US BANK NA,**
*Defendant*

---

2022-1598

---

Appeal from the United States District Court for the Eastern District of Texas in No. 2:19-cv-00331-RWS-RDP, Judge Robert Schroeder, III.

---

Decided:  April 1, 2024

---

STEVEN RITCHESON, Insight, PLC, Marina del Rey, CA, argued for plaintiff-appellant.  Also represented by JACQUELINE KNAPP BURT, Heninger Garrison Davis, LLC, Atlanta, GA; TIMOTHY C. DAVIS, W. LEE GRESHAM, III, Birmingham, AL.

2          ALEXSAM, INC. v. SIMON PROPERTY GROUP, L.P.

ELIZABETH M. MANNO, Venable LLP, Washington, DC, argued for defendant-appellee Simon Property Group, L.P. Also represented by TIMOTHY J. CARROLL, Orrick, Herrington & Sutcliffe LLP, Chicago, IL; LAURA A. WYTSMA, Los Angeles, CA.

JASON F. HOFFMAN, Baker & Hostetler LLP, Washington, DC, argued for defendant-appellee Blackhawk Network, Inc. Also represented by JAMES B. HATTEN, Atlanta, GA.

————————————

Before PROST, TARANTO, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

AlexSam, Inc. appeals the U.S. District Court for the Eastern District of Texas's grant of Simon Property Group, L.P.'s and Blackhawk Network, Inc.'s non-infringement summary judgment motions. AlexSam contends that the district court erred in its application of the stipulated claim construction of "unmodified" and that genuine issues of material fact exist. For the reasons that follow, we affirm.

I

Appellant AlexSam owns U.S. Patent No. 6,000,608, which discloses a "multifunction card system." '608 patent Abstract. The system includes a multifunction card that "can serve a number of functions, thus allowing the consumer to have one card which may act as their card for financial transactions, long-distance telephone calls, loyalty information, and medical information." *Id.* at 3:3–6. These cards do not require special programming to be used: they can be activated, reloaded, or used at existing, rather than specialized, point-of-sale retail devices. *Id.* at 4:14–20.

Independent claim 34 provides:

A system comprising:

a. at least one electronic gift certificate card having an electronic gift certificate card unique identification number encoded on it, said electronic gift certificate card unique identification number comprising a bank identification number approved by the American Banking Association for use in a banking network;

b. a transaction processor receiving electronic gift card activation data from an *unmodified existing standard retail point-of-sale device*, said electronic gift certificate card activation data including said unique identification number and an electronic gift certificate card activation amount;

c. a processing hub receiving directly or indirectly said activation data from said transaction processor; and

d. said processing hub activating an account corresponding to the electronic gift certificate card unique identification number with a balance corresponding to the electronic gift certificate activation amount.

*Id.* at 16:15–33 (emphasis added). Independent claim 60 recites "[a] method of activating a prepaid card" by "swiping the card through an *unmodified existing standard point-of-sale device*." *Id.* at 18:58–19:2 (emphasis added).

A

During prosecution of the '608 patent, the inventor distinguished their invention from the prior art because the patented invention "is specifically intended to be deployed over an existing banking network," therefore "custom software is not necessary at the activating location . . . . *Thus, existing point-of-sale devices known in the art for processing credit card and/or debit card transactions can be utilized without modification.*" J.A. 3469 (emphasis added). The patent examiner allowed the claims once the inventor

inserted the word "unmodified" before "existing standard point-of-sale device." *See* J.A. 3486–87. The '608 patent subsequently issued.

B

There has been much litigation regarding the meaning of "unmodified existing standard [retail] point-of-sale device"[1] as used in the '608 patent's claims. AlexSam sued Datastream Card Services Ltd. for infringement of the '608 patent in 2003. *Alexsam, Inc. v. Datastream Card Servs. Ltd.*, No. 2:03-cv-337 (E.D. Tex. Sept. 26, 2003), ECF No. 1. There, the district court issued a claim construction order, construing "unmodified existing standard [retail] point-of-sale device" to mean "a terminal for making purchases at a retail location of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system" (hereinafter, the *Datastream* construction). *Alexsam, Inc.*, No. 2:03-cv-337 (E.D. Tex. June 10, 2005), ECF No. 199 at 9. The district court reasoned that, based on the prosecution history, the "examiner required the inclusion" of "unmodified" "to clarify that the systems claimed in the '608 patent did not require any hardware and/or software modifications to the existing standard retail POS devices." *Id.*

In subsequent litigation involving the '608 patent, AlexSam has stipulated to the *Datastream* construction of "unmodified existing standard [retail] point-of-sale device." *See, e.g.*, *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1339

---

[1]    Independent claim 34 includes the bracketed term "retail," whereas independent claim 60 does not. The parties do not argue that the exclusion of "retail" meaningfully changes the scope of claim 60 relative to claim 34. For simplicity, we refer to both claim limitations as "unmodified existing standard [retail] point-of-sale device."

(Fed. Cir. 2013) (*IDT*); *Alexsam, Inc. v. Gap, Inc.*, 621 F. App'x 983, 986 (Fed. Cir. 2015) (*Gap*). In both cases, the construction of "unmodified existing standard [retail] point-of-sale device" was an important aspect of the disputes. In *IDT*, we reversed a district court's judgment of infringement because AlexSam did not provide sufficient evidence that "no modifications were actually made to the [accused systems'] software in order to allow them to activate [the accused's] cards." 715 F.3d at 1342, 1348. And in *Gap*, we reversed a district court's denial of judgment as a matter of law because AlexSam did not show prior conception of an "unmodified" point-of-sale device. 621 F. App'x at 994–95.

## C

Appellee Simon sells self-branded gift cards, including a Visa Gift Card, a 5% Back Visa Gift Card, and an American Express Gift Card. AlexSam initially sued only Simon, alleging that its gift cards infringed independent claims 34 and 60 and various dependent claims of the '608 patent. AlexSam later amended its complaint to include infringement claims against Appellee Blackhawk, the entity that supplies and activates some of the accused Simon-branded gift cards.

During claim construction, AlexSam, Simon, and Blackhawk agreed that the *Datastream* construction of "unmodified existing standard [retail] point-of-sale device" should be applied. J.A. 29, 67–68. Under the *Datastream* construction, "unmodified existing standard retail point-of-sale device" means "[a] terminal, for making purchases at a retail location, that is of the type in use as of July 10, 1997, and that has not been reprogrammed, customized, or

otherwise altered with respect to its software or hardware for use in the card system." J.A. 68.[2,3]

Simon and Blackhawk separately moved for summary judgment of non-infringement, arguing that AlexSam did not proffer sufficient evidence that the accused systems' point-of-sale devices were actually "unmodified" and, in any event, that the accused point-of-sale devices are modified (and not "unmodified" as required by the claims). J.A. 74. The magistrate judge issued a report and recommendation (R&R) recommending that the district court grant the non-infringement motions and dismiss AlexSam's infringement claims with prejudice. J.A. 69–83. The district court adopted the magistrate judge's R&R over AlexSam's objections and granted Simon's and Blackhawk's motions for summary judgment. J.A. 1–6.

AlexSam timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review a district court's summary judgment decision under applicable regional circuit precedent. *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1356 (Fed. Cir. 2016). The Fifth Circuit reviews the grant of summary judgment de novo. *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019). "Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2]    The stipulated construction of "unmodified existing standard point-of-sale device," as used in claim 60, omits the "at a retail location" language. J.A. 67.

[3]    No party argues that the added commas in the stipulated version of the *Datastream* construction applied here impacts the disputed "unmodified existing standard [retail] point-of-sale device" claim limitations. *See* J.A. 77 n.7.

judgment as a matter of law.'" *Unwired Planet*, 829 F.3d at 1356 (quoting Fed. R. Civ. P. 56(a) and citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III

On appeal, AlexSam challenges the stipulated and long-applied construction of "unmodified existing standard [retail] point-of-sale device," and argues that under the correct construction of "unmodified" or the correct application of the stipulated construction, genuine issues of material fact exist. We disagree.

To the extent that AlexSam attempts to challenge the stipulated construction of "unmodified existing standard [retail] point-of-sale device," we conclude that this argument is waived. *See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1278 (Fed. Cir. 2012) ("By stipulating to the construction that the district court adopted, Digital-Vending waived its right to challenge this construction on appeal.").

AlexSam next contends that the district court erred in applying the stipulated construction such that *any* modification made to a point-of-sale device would take that device outside the scope of the claims. As AlexSam understands the *Datastream* construction, the key language is "for use in the card system." Appellant's Br. 42. In AlexSam's view, "unmodified" excludes modifications "directed to the specific functions required of the device in the Asserted Claims," such as reading a card's identification number or having the device communicate data over a banking network, and that are "not otherwise required" because they are "required for any use, not just 'for use in the card system.'" *Id.*

We agree with AlexSam that a point-of-sale device can be altered in certain respects while still being "unmodified" for purposes of infringement. However, the *Datastream* construction, as it has long been applied, specifies what an

"unmodified . . . [retail] point-of-sale device" is: a point-of-sale device that has not been "reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." The magistrate judge faithfully applied this construction in the R&R, explaining that "modifications to the software or hardware that impact how the POS device would generally be used *in the card system* fall outside of the claim scope." J.A. 80 (emphasis added); J.A. 5. To the extent AlexSam even advances a new or different understanding of the "unmodified" claim term, we are unpersuaded by AlexSam's attempt to broaden the scope of "unmodified existing standard [retail] point-of-sale device" after stipulating to the *Datastream* construction after cases like *Gap* and *IDT*.

In sum, we conclude that the district court did not err in its application of the *Datastream* construction.

IV

We next consider whether the district court erred in its grant of Simon's and Blackhawk's motions for summary judgment of non-infringement. AlexSam argues that it offered sufficient evidence of Simon's and Blackhawk's infringement to proceed to trial. We are not persuaded.

The district court concluded there was no genuine dispute of material fact about whether the accused point-of-sale devices were "unmodified" because AlexSam's evidence was "substantially the same as that presented in *IDT*." J.A. 4. In *IDT*, we explained that to establish infringement, AlexSam had to show that the accused systems' point-of-sale devices "ha[d] not been reprogrammed, customized, or otherwise altered with respect to [their] software . . . for use in the card system." 715 F.3d at 1341 (emphasis omitted). Before the *IDT* district court, AlexSam relied on expert testimony that IDT's systems did not need to be modified to function with the accused cards, but did not opine that the point-of-sale devices were not actually "reprogrammed, customized, or otherwise altered" as

required by the *Datastream* construction. 715 F.3d at 1341–42. AlexSam's other expert similarly "testified that no modifications were 'necessary' to allow a standard [point-of-sale] terminal to read an IDT card." *Id.* at 1342. Ultimately, we reversed the district court's denial of IDT's motion for judgment as a matter of law of non-infringement because AlexSam failed to present sufficient evidence that IDT's accused systems had not been "reprogrammed, customized, or otherwise altered with respect to [their] software . . . for use in the card system." *Id.*

Here, AlexSam's expert testified that it was "not necessary to inspect the actual [point-of-sale] devices used in the Simon and Blackhawk systems" to determine that the accused systems infringed the asserted claims. J.A. 3223 (Zatkovich Supplemental Report ¶ 29). Once more, AlexSam's expert "concluded that no modification *is required* to the [point-of-sale] Devices for use in the Simon and Blackhawk systems." J.A. 3222 (Zatkovich Supplemental Report ¶ 26) (emphasis added). This testimony remains insufficient under *IDT*. We agree with the district court that AlexSam's evidence falls short of creating a genuine issue of material fact.

We conclude that the district court did not err in granting Simon's and Blackhawk's motions for summary judgment of non-infringement.

V

The district court correctly applied the stipulated *Datastream* claim construction and AlexSam did not provide sufficient evidence to establish a genuine dispute of material fact over whether the accused devices were "unmodified." We have considered AlexSam's additional arguments and find them unpersuasive. We affirm.

**AFFIRMED**