NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**ST CASE1TECH, LLC,**
*Appellant*

**v.**

**JOHN A. SQUIRES, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

———————————

2023-2305, 2023-2306

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-00242, IPR2022-00243.

———————————

Decided:  October 9, 2025

———————————

TIMOTHY DEVLIN, Devlin Law Firm LLC, Wilmington, DE, for appellant.  Also represented by ANDREW PETER DEMARCO, ROBERT J. GAJARSA, JASON MITCHELL SHAPIRO.

OMAR FAROOQ AMIN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for intervenor.  Also represented by PETER J. AYERS, MAI-TRANG DUC DANG, ROBERT J. MCMANUS.

———————————

Before PROST, TARANTO, and STARK, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Until recently, Staton Techiya, LLC, was the owner of U.S. Patent No. 8,111,839, along with its grandchild, No. 9,124,982, both relating to always-on recording systems. In December 2021, Samsung Electronics Co. and its affiliate Samsung Electronics America, Inc. (collectively, Samsung) petitioned for institution of three inter partes reviews (IPRs) under 35 U.S.C. §§ 311–19, and the Patent and Trademark Office (PTO) instituted all three requested IPRs—two involving the '839 patent and one involving the '982 patent. Relevant here, one of the IPRs for the '839 patent (IPR2022-00242) involved that patent's claims 14–17, which are materially identical to claims 17–20 of the '982 patent, at issue in the IPR for that patent (IPR2022-00234). In those two IPRs, the PTO's Patent Trial and Appeal Board (Board), based on its construction of the term "analysis," held the just-identified corresponding sets of four challenged claims unpatentable for obviousness for the same reasons. *Samsung Electronics Co. v. Staton Techiya, LLC*, IPR2022-00242 at 55–64 (P.T.A.B. June 16, 2023) (addressing the '839 patent's claims 14–17), J.A. 55–64; *Samsung Electronics Co. v. Staton Techiya, LLC*, IPR2022-00234 at 65–71 (P.T.A.B. June 14, 2023) (addressing the '982 patent's claims 17–20), No. 23-2294 J.A. 65–71. In the third IPR, the Board held claims 1–4 of the '839 patent unpatentable on different grounds. *Samsung Electronics Co. v. Staton Techiya, LLC*, IPR2022-00243 at 3, 57–58 (P.T.A.B. June 20, 2023), J.A. 89, 143–44.

Staton Techiya appealed all three Board decisions, and although it assigned the patents to a related entity, ST Case1Tech, LLC, which was substituted as the appellant, we use "Techiya" to refer to the original and substitute appellant. In the present consolidated appeals,

Techiya appeals the Board's decision regarding claims 14–17 of the '839 patent and the Board's decision regarding claims 1–4 of the same patent. Because Techiya makes no argument for error in the latter decision, we affirm that decision without further discussion. In a companion appeal before our panel today, No. 23-2294, Techiya appeals the Board's decision regarding claims 17–20 of the '982 patent. Because the issues and arguments in that appeal do not differ from those in the present appeal concerning claims 14–17 of the '839 patent, our decision here controls in the companion appeal.

Techiya contends that the Board erroneously construed the term "analysis" in a limitation requiring an "audio forensics analysis system" in claims 14–17 of the '839 patent. It argues that "analysis" means "analysis of a user's sound exposure." We reject this claim-construction challenge. We conclude that Techiya has forfeited its present argument by not making it to the Board and, in any event, that the argument is incorrect in light of the intrinsic evidence. We therefore affirm.

## I

The '839 and '982 patents are both titled "Always On Headwear Recording System," and they share a specification, so we cite only the '839 patent's specification. The specification describes an always-on recording system implemented on a microphone-equipped device like an earpiece or a mobile phone, which, by maintaining a buffer of recent incoming sound, allows a user to opt to save an incoming sound stream even after the stream has begun. '839 patent, col. 1, lines 1–2, 14–17; *id.*, col. 3, lines 16–39. The specification discloses embodiments in which the always-on recording system automatically saves a recording upon detection of certain audio triggers, such as sounds associated with a car crash, *e.g.*, *id.*, col. 6, lines 21–30, and embodiments involving the translation of recorded speech

to text, *e.g.*, *id.*, col. 6, line 62, through col. 7, line 4; *id.*, col. 6, lines 5–8.

As relevant here, the two patents' claims differ only in that the '982 patent claims always-on recording functionality implemented on a mobile phone, '982 patent, col. 14, line 48, while the '839 patent claims similar technology implemented in an earpiece, '839 patent, col. 14, line 48. In particular, except for that difference, claims 14–17 of the '839 patent are essentially identical to claims 17–20 of the '982 patent. Claims 15–17 of the '839 patent depend on claim 14, which depends on claim 1, the language of which is not at issue here. *See* Techiya Opening Br. at 20.

Claim 14 is representative and reads as follows:

14. The system according to claim 1 further comprising:

a remote **audio forensics analysis system** configured to analyze either the content of the circular buffer or the data stored on the further storage device.

'839 patent, col. 16, lines 12–15 (emphasis added). The specification describes an "audio forensics analysis system" as "includ[ing] all, either or a combination of the following functionality":

an audio signal data communication system for transmitting the contents of the circular buffer to a remote server for analysis of the audio signal; an audio signal data communication system for transmitting the contents of the second data storage device (e.g. [personal media player] or mobile phone) to a remote server for analysis of the audio signal; a data communication system for transmitting the analysis of the audio data back to the [always-on recording system] user, e.g. via email, SMS text, or as a computer-generated speech text; **a speech-to-text analysis system on the remote server**; a

> language-translation system to translate text from one language to another; a text-to-speech translation system to translate text into speech for transmission back to the [always-on recording system] user; a text-based acoustic event logging system whereby the time-stamped audio data communicated to the server[ ] is analyzed for pre-determined events such as transient sounds, and a log of the sound exposure of the user is made and optionally communicated back to the user, e.g. with an SMS or email; a system which analyzes the audio data to determine if the [always-on recording system] user has been involved in an accident, e.g. if a car-crash or gun-fire sound is detected.

*Id.*, col. 13, lines 29–54 (emphasis added). The term "audio forensics analysis system" does not appear anywhere else in the patent outside the just-quoted specification passage and the claims. The specification does, however, mention "an audio forensic examination of [a] user's sound exposure history profile," *id.*, col. 5, lines 28–30, and disclose that "[a]nother use of the [always-on recording system] is for audio forensics to determine a sound exposure of a listening prior to an accident," *id.*, col. 6, lines 21–22.

In November 2021, Techiya sued Samsung in the Eastern District of Texas for infringement of the '839 and '982 patents, among others. Amended Complaint at 1–3, ¶¶ 1, 7, 10, *Staton Techiya, LLC v. Samsung Electronics Co.*, No. 2:21-cv-00413, ECF No. 11 (E.D. Tex. Nov. 12, 2021). On December 13, Samsung petitioned the PTO for institution of three IPRs. J.A. 167, 170; No. 23-2294, J.A. 108. Two of its petitions challenged claims of the '839 patent—the petition that resulted in IPR2022-00242 challenged claims 1, 5–12, 14–17, and 21–23, J.A. 2, and another petition, resulting in IPR2022-00243, challenged claims 1–4, J.A. 88. The last of Samsung's petitions, resulting in IPR2022-00234, challenged claims 1–6, 10–11, 14–15, 17–20, and 24–25 of the '982 patent. No. 23-2294, J.A. 2. As

relevant here, Samsung alleged in IPR2022-00242 that claims 14–17 of the '839 patent are unpatentable for obviousness over a combination of U.S. Patent No. 9,123,343 (Kurki) and certain other prior art.  J.A. 241–42.  It advanced a similar theory in IPR2022-00234 with respect to claims 17–20 of the '982 patent, involving a different combination including Kurki.  No. 23-2294, J.A. 121, 169–70.

Kurki relates to methods and devices for converting speech into text.  J.A. 1015.  Kurki describes accomplishing speech-to-text conversion by taking an input of "digital form speech" and, optionally, "additional noise" and "analy[zing]" that input on a "frame-by-frame basis" to correlate each sound in the input with likely phonemes, which are then combined to form textual words and sentences.  J.A. 1029, col. 13, lines 35–36, 40–41; *see id.*, col. 13, lines 35–62.  Samsung alleged in its petition in IPR2022-00242 that the '839 patent's description of a "remote forensics analysis system," which "includes all, either or a combination of" speech-to-text and text-to-speech functionality, encompasses Kurki's speech-to-text analysis system, which therefore performs audio forensics analysis.  J.A. 241–42 (quoting '839 patent, col. 13, lines 32–46).  Given that understanding, Samsung alleged that Kurki discloses an audio forensics analysis system because it teaches speech-to-text analysis.  J.A. 241.

The Board, on behalf of the PTO's Acting Director, instituted all three requested IPRs.  J.A. 3, 89; No. 23-2294, J.A. 2.  In IPR2022-00242, Techiya argued that Samsung's combination would not have rendered claim 14 (and, by extension, its dependent claims 15–17) of the '839 patent obvious because Samsung had misconstrued "analysis."  J.A. 1970.  (IPR2022-00243, concerning claims 1–4 of the '839 patent, did not involve any claim reciting "analysis."  J.A. 88–93.)  Techiya, relying on a declaration from an expert, contended that "[t]he plain meaning of ['analysis'], as used in the hearing protection industry, is the calculation of noise dosage a person receives."  J.A. 1970 (citing J.A. 2078

¶ 125). A "calculation of noise dosage, in turn, generally involves examining . . . sound pressure level, frequencies of the sound, duration of the sound (steady-state or impulsive), and length of time of exposure." *Id.* (citing J.A. 2078 at ¶ 126). According to Techiya, such a calculation necessarily excludes speech-to-text analysis because speech-to-text systems analyze only speech, discarding other audio signals, while "noise dosage analysis seeks to analyze, characterize, and identi[f]y all captured acoustical data, including but not limited to speech." J.A. 1970–71 (citing J.A. 2078 at ¶ 127).

In its final written decision in IPR2022-00242, in June 2023, the Board agreed with Samsung's construction. J.A. 56–59. It concluded that Techiya's proposed construction, requiring a "calculation of noise dosage," had "no objective support in the record." J.A. 57, 59. Instead, "[g]iven the specificity of th[e '839 patent's] disclosure" that a "remote audio forensics system includes all, either or a combination of . . . a speech-to-text analysis system," and that disclosure's "clear correspondence to the system recited in claim 14," the Board concluded from the intrinsic evidence that speech-to-text analysis is a type of audio forensics analysis in the meaning of the claims. J.A. 58–59 (quoting '839 patent, col. 13, lines 29–58).

Applying that construction, the Board found that Kurki discloses speech-to-text conversion and translation, hence an audio forensics analysis system. J.A. 61. The Board observed that Techiya's arguments regarding claim 14 were all premised on its own claim construction, J.A. 60–61, and the Board agreed that Samsung had persuasively shown a motivation to combine Kurki with two other references that collectively disclosed all elements of claims 14–17, J.A. 60–64. On those bases, the Board held that claims 14–17 were unpatentable for obviousness. J.A. 63–64.

Also in June 2023, the Board issued separate final written decisions in IPR2022-00243 and IPR2022-00234. In IPR2022-00243, the Board held claims 1–4 of the '839 patent unpatentable for obviousness over a different combination. J.A. 89, 143–44. And in IPR2022-00234, the Board held claims 17–20 of the '982 patent unpatentable for obviousness over Kurki and other references for the same reasons it gave in IPR2022-00242 for claims 14–17 of the '839 patent. No. 23-2294, J.A. 65–71.

Techiya timely appealed all three final written decisions. We consolidated its appeals from the two decisions involving the '839 patent, and we treated the appeal from the decision involving the '982 patent as a companion to that pair. We decide the companion appeal today in a separate opinion. *See generally ST Case1Tech v. Squires*, No. 23-2294 (Fed. Cir. Oct. 9, 2025).

In the consolidated appeals addressed in this opinion, the only argument presented to us is Techiya's challenge to the Board's decision in IPR2022-00242 that claims 14–17 of the '839 patent are unpatentable. Techiya, though filing an appeal from the decision in IPR2022-00243, has not challenged any aspect of that decision, *see* Techiya Opening Br. at 20—which we therefore affirm. Samsung, for its part, filed a cross-appeal (regarding claims the Board upheld), but it later settled with Techiya, voluntarily dismissed its cross-appeal, and withdrew from the proceedings in this court. ECF No. 43. The Acting Director timely intervened as of right, under 35 U.S.C. § 143, to defend the Board's decisions following Samsung's withdrawal. ECF No. 48. We have jurisdiction under 35 U.S.C. §§ 141(c), 319 and 28 U.S.C. § 1295(a)(4)(A).

II

Techiya's principal argument on appeal is that the Board erred by not adopting Techiya's claim construction of "analysis" in claim 14 of the '839 patent. *See* Techiya Opening Br. at 22–28. We review the Board's claim

construction without deference where, as here, it is based on only intrinsic evidence. *See Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1339 (Fed. Cir. 2015). An important rule, however, is that on appeal a party may not "alter the scope of the claim construction positions it took [before the Board]." *Digital-Vending Services International, LLC v. University of Phoenix, Inc.*, 672 F.3d 1270, 1273 (Fed. Cir. 2012) (internal quotation marks and citation omitted). Claim-construction positions "not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances." *In re Google Technology Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020); *see also WSOU Investments LLC v. F5, Inc.*, Nos. 23-1427 and 25-1505, 2025 WL 1135207, at *4 (Fed. Cir. Apr. 17, 2025) (nonprecedential) (collecting cases).

A

Techiya contends that the correct construction of "audio forensics analysis" is "analysis of noise dosage, i.e., *an analysis of a user's sound exposure.*" Techiya Opening Br. at 22 (emphasis added). And it clarifies that its position on appeal is not that "'analysis' means calculation of noise dosage," but that audio forensics analysis "*includes* the calculation of *a type of* sound exposure analysis, noise dosage." Techiya Reply Br. at 1 (emphasis added); *see also id.* at 2 (explaining Techiya's position that "audio forensics analysis" includes "various analysis . . . such as *a form of* sound exposure analysis referred to as 'noise dosage analysis'") (emphasis added). Techiya has forfeited this position because it was not presented to the Board.

The construction that Techiya offered to the Board, in its patent owner's response, was that the "plain meaning" of "'analyze/analysis', when used in the hearing protection industry, *is* the calculation of noise dosage a person receives," which it defined as "generally" involving an examination of sound pressure, frequency, pattern, and duration. J.A. 1970 (emphasis added); *see also* J.A. 2078

(expert declaration); J.A. 3369–71 (offering no different understanding in Techiya's sur-reply). Though Techiya now contends that it is a "mischaracterization" to say that its claim-construction position was that "'analysis' means calculation of noise dosage," Techiya Reply Br. at 1, that is almost verbatim the assertion it made to the Board, as just quoted. And its present construction is facially broader than the construction it presented to the Board: Where previously Techiya said that audio forensics analysis "*is* the calculation of noise dosage," J.A. 1970 (emphasis added), it now says that such analysis not only "*includes* the calculation . . . of noise dosage," but encompasses any "analysis that uses all . . . captured acoustic data," Techiya Reply Br. at 1, 10 (emphasis added).

These circumstances trigger the rule against presenting new claim constructions on appeal. *See, e.g., In re Google*, 980 F.3d at 862–64; *see also In re Watts*, 354 F.3d 1362, 1368 (Fed. Cir. 2004). That rule serves important and familiar principles in this, like any, adjudicatory system, including efficiency, fairness, and respect for the role of the reviewed tribunal. *See In re Google*, 980 F.3d at 863–64. And we see no basis for finding "exceptional circumstances" to justify excusing the forfeiture in the present matter, where Techiya "chose what construction to propose to" the Board, "was fully heard on its reasoning," and never apprised the Board of its present understanding of audio forensics analysis. *Wash World Inc. v. Belanger Inc.*, 131 F.4th 1360, 1369–70 (Fed. Cir. 2025).

B

Although the strength and clarity of a position in a case may sometimes help justify disregarding a forfeiture to avoid a clear injustice, *see Singleton v. Wulff*, 428 U.S. 106, 120–21 (1976), this is not such a case. To the contrary, Techiya has not shown that its new position is even correct, let alone clearly so.

When construing claims, we give each claim term "the meaning that the term would have to a person of ordinary skill in the art," considering "the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). The specification, in particular, "is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Expert testimony is not accorded significant (or any) weight if it amounts to nothing more than "conclusory, unsupported assertions . . . as to the definition of a claim term." *Phillips*, 415 F.3d at 1318.

Here, the disclosure of the '839 patent set out in the block quote above clearly supports the conclusion, as Samsung put it, that an "audio forensics [analysis] system includes a speech-to-text analysis system," J.A. 2463 (quoting '839 patent, col. 13, lines 32–46), as the Board recognized, J.A. 58–59. On the record presented to us, that disclosure is dispositive. Before the Board, Techiya offered only the declaration of its expert, which does not focus on Techiya's new construction; even as to what it does assert regarding the "audio forensics analysis system" phrase, it is essentially unsupported say-so, J.A. 2077–80 ¶¶ 124–31, far from sufficient to alter the otherwise-evident meaning of the key specification passage reproduced above. And though Techiya, on appeal, looks for support for its current position in examples from the specification, Techiya Opening Br. at 22–24, those examples are not, alone or together, inconsistent with the conclusion that "audio forensics analysis" encompasses accident-detection and black-box functionalities as well as speech-to-text functionality. *See, e.g.*, '839 patent, col. 3, lines 26–30; col. 7, lines 1–3; col. 9, lines 1–3 (disclosing embodiments including speech-to-text functionality). That is the strong import of the '839 patent's disclosure, and Techiya identifies no intrinsic evidence undermining that reading. *See* Techiya Opening Br. at 22–24; Acting Director Response Br. at 21–23. We thus discern

no basis in Techiya's new arguments to reject the Board's construction of the "audio forensics analysis system" claim limitation.

## III

We have considered Techiya's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the decisions of the Board.

**AFFIRMED**